**SO ORDERED.**

**SIGNED this 2nd day of June, 2022.**



Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use but not print publication
## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br>**Brian G. Smith,**<br>          Debtor. | **Case No.  19-40964**<br>**Chapter 7** |
| **Darcy D. Williamson, Trustee,**<br>          Plaintiff,<br><br>v.<br><br>**Brian G.  Smith, et al.,**<br>          Defendants. | **Adv.  No.  22-07002** |

## Memorandum Opinion and Order
## Denying Motion to Dismiss Count VI (Fraudulent Transfer) Against
## Defendants Amy J. Smith and BAS Enterprises, LLC
## on Statute of Limitations Grounds

In this adversary proceeding, the Chapter 7 Trustee of the estate of

Debtor Brian G. Smith brings claims against ten separate defendants

claiming under various theories that they owe money or property to the estate. Count VI of the Amended Complaint alleges that several transfers, apparently made for financial planning purposes over a period in excess of ten years prepetition, are avoidable as fraudulent under 11 U.S.C. § 544(b). The Trustee asserts that to avoid the transfers she may step into the shoes of the Internal Revenue Service, alleged to be the holder of a $21,000 unsecured claim against the Debtor, and, when doing so, proceed under two alternative laws: (1) the Kansas Uniform Fraudulent Transfer Act,[1] in which case the Trustee argues the state law four year look back period would not apply; or (2) the Federal Debt Collection Practices Act,[2] which contains a six year look back period. The Count VI defendants seek dismissal[3] in part on two grounds. First, they argue if the Trustee proceeds under state law, the Kansas four year look back period limits the transfers subject to recovery. Second, they argue that the federal act does not apply under § 544(b). As explained below, the Court holds: (1) when proceeding under Kansas law, the Kansas look back period does not apply and is replaced by the federal ten year limitation

---

[1] K.S.A. § 33-201, *et. seq.*

[2] 28 U.S.C. § 3301, *et. seq.*

[3] Doc. 35 (Motion to Dismiss Amended Complaint).

2

period; and (2) the Trustee may proceed under the Federal Debt Collection Practices Act and utilize its six year look back period.

## I. Standard for dismissal under Rule 12(b)(6)

Defendants' motion to dismiss is brought under Rule 12(b)(6),[4] which provides that a party may assert the defense of "failure to state a claim upon which relief can be granted" by motion. A claim has been sufficiently stated under Rule 12(b)(6) when the complaint presents factual allegations, when assumed to be true, that "raise a right to relief above the speculative level," and "state a claim for relief that is plausible on its face."[5] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] Although the statute of limitations is an affirmative defense, it can be resolved under a Rule 12(b)(6) motion when the dates alleged in the complaint make it clear that the right sued on has been extinguished.[7]

---

[4] Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[6] *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Carter v. Spirit Aerosystems, Inc.*, No. 16-1350, 2017 WL 5079625, at *2 (D. Kan. Nov. 3, 2017). *See Kansas ex rel. Gordon v. Oliver (In re Oliver*, 547 B.R. 423, 426 (Bankr. D. Kan. 2016); 5B Arthur R. Miller, *Federal Practice and Procedure Civil* § 1357 (3d ed. 2022).

Case 22-07002   Doc# 48   Filed 06/02/22   Page 3 of 25

## II. Procedural history

Debtor Brian Glen Smith ("Debtor")[8] filed for relief under Chapter 7 on August 1, 2019. The Chapter 7 Trustee originally assigned resigned, and Darcy D. Williamson ("the Trustee")[9] was appointed as successor trustee.

The Trustee filed this adversary proceeding on January 12, 2022, seeking to recover assets as property of the estate. It requests orders against ten defendants under seven counts.[10] Defendants Amy J. Smith; the Amy J. Smith Trust; BAS Enterprises, LLC; Moon River Properties, LLC; and B&N Investments, LLC moved to dismiss Counts V, VI, and VII for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[11] They presented issues of adequacy of the pleadings and the statute of limitations applicable to the § 544(b) fraudulent transfer claim.

---

[8] Debtor appears by Wesley F. Smith. The Defendants moving to dismiss appear by William R. Griffin.

[9] Trustee appears by J. Michael Morris.

[10] Count I - sale of property jointly owned by Debtor and his wife, Amy Jo Smith; Count II - declaration of rights of the estate in property held by certain defendants; Count III - turnover of property alleged to be property of the estate; Count IV - turnover of postpetition transfers; Count V - avoidance of fraudulent transfers under § 548; Count VI - avoidance of fraudulent transfers under § 544(b); and Count VII - imposition of a constructive trust.

[11] Doc. 23.

4

The Trustee responded by filing an Amended Complaint alleging the same causes of action against the same defendants but with more specificity. She also filed a response to the motion to dismiss. The moving defendants filed a second motion to dismiss,[12] but acknowledged that the Amended Complaint cured their contentions of improperly vague pleadings in Counts V, VI, and VII. By separate order, the Court has denied the motion to dismiss Counts V and VII and the pleading specificity objection to Count VI.

Amy Smith and BAS Enterprises, LLC ("BAS") (collectively "Defendants") in their reply provided additional arguments with respect to the only remaining issues raised in the motion to dismiss - (1) the look back period applicable to the Count VI § 544(b) claim when relying on state fraudulent conveyance law; and (2) whether the Trustee may alternatively rely on federal fraudulent conveyance law. This memorandum addresses those issues.

### III.  Count VI allegations

In Count VI the Trustee alleges numerous transfers by Debtor to Defendants. BAS was created in 2008 and was funded with capital contributed by Debtor. Debtor and Amy Smith were the original members. In 2007, Debtor and Amy Smith purchased two farms for $359,000, and on June

---

[12] Doc. 35.

9, 2009, ownership was transferred to BAS. In addition, the Trustee alleges that Debtor's funds were used prepetition to acquire interests by Amy Smith or BAS in various entities, that the Debtor's interest in two entities were transferred to BAS, and that distributions from Debtor's businesses were transferred to Amy Smith or BAS. Debtor's interest in BAS was allegedly transferred to Amy Smith in 2008, 2009, and 2012, such that he had no interest in BAS when the case was filed. Count VI alleges that Debtor received no consideration in exchange for the foregoing transfers, some of which were made more than ten years before the bankruptcy filing.

When seeking to avoid the foregoing transfers by the Debtor under § 544(b),[13] the Trustee alleges she may step into the shoes of the Internal Revenue Service ("IRS"). For purposes of resolving the motion to dismiss, the IRS holds an allowable unsecured claim, as evidenced by proof of claim no. 4 for 2018 federal income taxes, in the amount of $20,574.08, plus a penalty of $797.20.[14] Relying on this assessment, the Trustee contends she has authority to avoid fraudulent transfers made either within six years prior to

---

[13] 11 U.S.C. § 544(b). Future references in the text to Title 11 shall be to the section number only.

[14] Proof of Claim no. 4 states the taxes were assessed on Nov. 18, 2021.

6

bankruptcy under federal law[15] or "any applicable transfer, regardless of when made,"[16] under Kansas fraudulent transfer law.[17]

## IV. Analysis

### A. Section 544(b) and the parties' positions

The Bankruptcy Code in § 544(b) provides in part: "[T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." The limitations for avoidance under § 544(b) are governed by §546(a).

Section 544(b) grants the trustee the avoidance powers held by creditors of the estate when the case was filed. The trustee has the burden to demonstrate the existence of an actual creditor with an allowable avoidance claim, often referred to as the "triggering" creditor.[18] The triggering creditor's potential right to avoid transfers under applicable law defines the trustee's rights as successor to that creditor. Most frequently the applicable law is the

---

[15] 28 U.S.C. § 3304(b).

[16] Amended Complaint, doc. 29 p. 17.

[17] K.S.A. 33-204(a).

[18] 5 *Collier on Bankruptcy* ¶ 544.06[1] (Richard Levin & Henry J. Sommer eds.-in-chief, 16th ed. 2022).

Case 22-07002    Doc# 48    Filed 06/02/22    Page 7 of 25

state fraudulent transfer statute, but when the triggering creditor has

avoidance rights under federal law, the trustee likewise has such rights.[19]

Here the Trustee has identified the IRS as the triggering creditor and

alleges that the transfers identified in Count VI are avoidable under the

Kansas Uniform Fraudulent Transfer Act ("UFTA")[20] and the Federal Debt

Collection Procedure Act ("FDCPA").[21] The Kansas UFTA provides that a

---

[19] 4 *Norton Bankr. L. & Prac.* § 63.7 (2022) ("In addition to state fraudulent conveyance laws, this section of the Code conveys potential right under state bulk sales laws, state preference laws, as well as various federal avoidance laws.").

[20] K.S.A. 33-201 *et seq.* K.S.A. 33-204(a) provides in part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, . . . if the debtor made the transfer or incurred the obligation:
    (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
    (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor
        (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
        (B) intended to incur, or believed or reasonably should have believed that such debtor would incur, debts beyond such debtor's ability to pay as they became due.

[21] 28 U.S.C. § 3001 *et. seq.* 28 U.S.C. § 3304(b) provides in part:

(1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, if the debtor makes the transfer or incurs the obligation--
    (A) with actual intent to hinder, delay, or defraud a creditor; or
    (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor--

claim to avoid a transfer is extinguished if not filed within four years after the transfer was made,[22] and the FDCPA provides a claim with respect to a fraudulent transfer is extinguished if the action is not filed within six years after the transfer was made.[23] These four and six year periods will be referred to as the "look back" periods. They are the focus of the present controversy.

The Trustee contends that when proceeding under the UFTA, she is not subject to the state law four year look back period, and either there is no look back period or, if there is such a period, it is ten years after the tax assessment against the Debtor. If proceeding under the FDCPA, the Trustee contends she may avoid any applicable transfer made within six years prior to the bankruptcy petition, or after August 1, 2013.

---

> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The Tenth Circuit has described the FDCPA, as follows: "Congress passed the FDCPA to facilitate debt collection by the United States. . . . [It ] creates a comprehensive, uniform statutory framework for the collection of federal debts," including taxes. *United States v. Badger*, 818 F.3d 563, 573 (10th Cir. 2016). However, the act does not "curtail or limit the right of the United States under any other Federal law or any State law" to collect taxes. 28 U.S.C. § 3003(b)(1).

[22] K.S.A. 33-209(a).

[23] 28 U.S.C. § 3306(b).

9

For purposes of the motion to dismiss, the Defendants do not challenge the Trustee's assertion that she may step into the shoes of the IRS, as the holder of an allowable unsecured claim,[24] but do challenge the Trustee's position as to the applicable look back date under the Kansas UFTA and whether the Trustee may invoke the FDCPA.

**B. The look back period applicable to the Trustee's § 544(b) claims premised on the Kansas UFTA**

**1. When federal income taxes are collected by the IRS from transferees of a taxpayer under a state UFTA outside of bankruptcy, the statute of limitations is 26 U.S.C. § 6502.**

Transferee liability for an assessed tax "has traditionally been applied where taxpayers have transferred assets in order to avoid their application to a tax liability."[25] Under 26 U.S.C. § 6901, such transferee liability is enforced under law or equity in the same manner as in the case of the income tax being collected. However, the tax code "was not intended to create a body of substantive transferee liability law in addition to the existing federal and state statutes that permit the government to reach transferred property, but merely to simplify the process of collecting against a transferee under other laws."[26] Thus, the IRS may use state fraudulent conveyance statutes and

---

[24] *See* doc. 34, p. 3 n. 1.

[25] 14A *Mertens Law of Fed. Income Tax'n* § 53:1 (2022).

[26] Saltzman & Book, *IRS Prac. & Proc.* § 17.01 (2022).

10

other laws to collect the tax from a person receiving property from the taxpayer.

When proceeding under state law to collect taxes from a transferee of the taxpayer, the United States is not subject to the applicable state limitation period. For example, in *Holmes*[27] the United States sued the sole shareholder of a defunct corporation seeking to collect income taxes owed by the corporation. Liability was premised on a Colorado statute which provided if assets have been distributed to an owner in liquidation of a company, a creditor of the dissolved corporation may enforce the company's liability against the owner up to the total value of the assets transferred. The former owner, who had received assets up to ten years prior to the assessment of the corporate tax, appealed the judgment in favor of the government, contending the claim was barred by the state law two year limitation or extinguishment period. The Tenth Circuit affirmed. It applied United States Supreme Court precedent holding that when proceeding under state law, the United States is not limited by a state statute of limitations or extinguishment if suing to

_____

[27] *United States v. Holmes*, 727 F.3d 1230 (10th Cir. 2013).

11

collect a tax in its sovereign capacity and may invoke the ten year limitation period of 26 U.S.C. § 6502.[28]

## 2. Avoidance of the taxpayer's transfers when a trustee asserts the state law rights of the IRS under § 544(b)

### a. The state law look back period does not apply

The question here is whether the state law limitation period nevertheless applies when the Trustee is proceeding under state law in the shoes of the IRS under § 544(b). The Kansas UFTA provides that a claim with respect to a fraudulent transfer as to creditors under the act is extinguished unless brought within four years after the transfer was made.[29] If that statute is applicable in this case, some of the allegedly fraudulent transfers identified in the Amended Complaint could not be recovered by the Trustee under state law.

When moving to dismiss, Defendants rely on *Vaughan*,[30] a New Mexico bankruptcy case. The *Vaughan* court recognized, under Supreme Court

---

[28] *Id.* at 1235 (citing *United States v. Summerlin*, 310 U.S. 414 (1940)). *See* 1 Saltzman & Book, *IRS Prac. & Proc.* at § 17.05 [3]. In an unpublished opinion thirteen years before *Holmes*, the Tenth Circuit held the same ten year limitation period was applicable to a proceeding under the New Mexico UFTA by the United States to recover real property transferred by individual taxpayers. *United States v. Spence*, 242 F.3d 392 (10th Cir. 2000).

[29] K.S.A. 33-209(a).

[30] *Wagner v. Ultima Homes, Inc. (In re Vaughan Co.)*, 498 B.R. 297 (Bankr. D.N.M. 2013).

12

precedent, when seeking to collect taxes from a transferee under the UFTA, the IRS is not bound by a state statute of limitations. The court also recognized that § 544(b) allows the Trustee to stand in the shoes of the IRS when seeking to avoid transfers from a debtor. However, *Vaughan* concluded that a trustee when standing in the shoes of the IRS is not immunized from state statutes of limitations. This is because when exercising avoidance rights a trustee is pursuing private interests. "[N]ot even the sovereign is immune from state statutes of limitations when an action, brought in the name of the United States, involves no public rights or interests."[31] In addition, the court concluded that when enacting § 544(b), Congress did not intend "to vest sovereign powers in a bankruptcy trustee and thereby immunize her from the strictures of state law in pursuit of her private interests."[32] As to bankruptcy policy, the court observed that because the IRS holds an unsecured claim in a substantial portion of bankruptcy cases, ruling that a trustee is not subject to state limitations when the IRS is the triggering creditor would eviscerate the four year look back period in most bankruptcy cases.

---

[31] *Id.* at 305 (*citing Marshall v. Intermountain Elec. Co., Inc.*, 614 F.2d 260, 263 n. 3 (10th Cir. 1980)).

[32] *Id.* at 304.

The Trustee responds that a majority of bankruptcy cases hold state law limitations do not apply when the IRS is the triggering creditor. In particular, she relies on *Kaiser*[33] and *Kipnis*.[34] In *Kaiser*, the Chapter 7 trustee sought to avoid fraudulent conveyances under § 544 and the Illinois UFTA. Some defendants sought to dismiss the claims for transfers beyond the four year Illinois look back period. The trustee responded that it was stepping into the shoes of the IRS, that the IRS held an allowed claim for taxes, and that the Illinois limitation was inapplicable. The court agreed. When proceeding to collect a tax by way of transferee liability under state law, although the IRS is subject to state substantive law, it is "subject to [26 U.S.C. § 6502] the limitations period set out in the Internal Revenue Code, not the statute limitations set forth in the state fraudulent-transfers law."[35] The *Kaiser* court found the *Vaughan* analysis misplaced, since it has no basis in the plain language of § 544(b). The movant's concerns about the scope of avoidance rights when the IRS is the triggering creditor were rejected as contrary to the plain language of § 544, which places no limits other than the holding of an unsecured claim.

---

[33] *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697 (Bankr. N.D. Ill. 2014).

[34] *Mukamal v. Citibank N.A. (In re Kipnis)*, 555 B.R. 877 (Bankr. S.D. Fla. 2016).

[35] *In re Kaiser*, 525 B.R. at 710.

14

*Kipnis*[36] followed *Kaiser* and also rejected *Vaughan.* The Chapter 7 trustee in *Kipnis* sought to avoid allegedly fraudulent transfers made by the debtor to his wife approximately nine years prepetition. The wife moved to dismiss on the ground that the trustee's claims were barred by Florida's four year look back period. The court observed that the Internal Revenue Code grants the IRS authority to collect taxes from a transferee, provided such action is pursued within ten years of the taxpayer assessment.[37] The *Kipnis* court agreed with *Kaiser* that "the language in § 544(b) is clear and allows the Trustee . . . to step into the shoes of the IRS to take advantage of the ten-year collection period in 26 U.S.C. § 6502."[38] *Kipnis* expressly rejected *Vaughan* for failure to start with the plain meaning of §544(b).[39] It also found that although the *Vaughan* court's policy concerns may be justified, a court cannot simply read a limitation into the statute.

This Court concludes that it will follow the majority position, as illustrated by *Kaiser* and *Kipnis,* that the Trustee when pursuing a claim under the Kansas UFTA by stepping into the shoes of the IRS is not subject

---

[36] *In re Kipnis*, 555 B.R. at 877.

[37] *Id*. at 881.

[38] *Id*. at 883.

[39] *Id*. at 882.

to the Kansas four year look back period. Under the plain wording of § 544(b), Congress granted to a trustee the rights of a creditor holding an allowable unsecured claim under applicable law. The grant of derivative rights to a trustee is unqualified. As discussed above, if the IRS were to pursue the Defendants as transferees of Debtor's property under Kansas state law to collect Debtor's taxes outside of bankruptcy, the proceeding would not be subject to the Kansas look back period. Nothing in § 544(b) suggests a difference in the applicable look back period when a trustee is substituted for the IRS in a proceeding under § 544(b). Further, the Trustee's position is the clear majority position.[40] Although *Vaughan* was decided in 2013, to the Court's knowledge, no bankruptcy court has followed *Vaughan*.

Nevertheless, this Court shares the policy concerns addressed by *Vaughan*. This is not a rare situation. Unsecured tax claims exist in many cases. The plain language of § 544(b) permits an extension of avoidance actions in a manner most likely not contemplated by the drafters. One result is an uneven playing field for transferees. Only in those cases where there are tax claims may perfectly valid estate planning transactions made in good faith more than four years prepetition be challenged and set aside. The

---

[40] *Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 834 (Bankr. D. Id. 2017).

16

extended look back period is an invitation to commence litigation about long forgotten transactions. Unfortunately under current standards of statutory construction the Court is constrained to interpreting the plain language of § 544 without regard to these adverse consequences.

**b. There is a ten year look back period when a trustee utilizing the Unites States as a § 544(b) triggering creditor seeks to avoid transfers under state law.**

Having rejected the Defendants' position that the state law four year look back period applies to the Trustee's fraudulent transfer claim, the Court must now determine the applicable look back period. The Trustee contends the period is unlimited - that there is no look back period, or if limited, the period is ten years. The Defendants oppose these contentions.

As stated above, when the IRS seeks to collect income tax by setting aside transfers made by the taxpayer outside of bankruptcy, the Tenth Circuit has held the "government's claim is not subject to state statutes of limitations or extinguishment,"[41] and under 26 U.S.C. § 6502 the applicable statute of limitations for commencement of the case is ten years from the date of assessment. Section 6502 provides, where a tax assessment has been timely made, "such tax may be colleted by levy or a proceeding in court . . . begun within 10 years after the assessment."

---

[41] *United States v. Holmes*, 727 F.3d at 1235.

17

In § 544(b) fraudulent conveyance claims against transferees when the IRS is the triggering creditor, the majority of bankruptcy courts holding state law look back or extinguishment statutes inapplicable also adopt 26 U.S.C. § 6502.[42] For example, after finding no prohibition against a trustee stepping into the shoes of the IRS, one court recently concluded that a trustee may "utilize the 10-year lookback period provided for by the IRC."[43] *Kipnis*[44] and *Kaiser*,[45] the widely followed cases discussed above, both hold the ten year period applies.

In this case, the Trustee argues that there is no limit on the reach back period. Her argument is that 26 U.S.C. § 6502 is a limitation period, not a look back period. In support of this distinction as applied to § 544(b) actions, the Trustee cites *Krause*,[46] a 2007 unpublished opinion by former Kansas Bankruptcy Judge Nugent, where fraudulent transfer claims were pursued by

---

[42] *Gordon v. Webster (In re Webster)*, 629 B.R. 654, 674-75 (N.D. Ga. 2021); 5 *Collier on Bankruptcy* at ¶ 544.06. Peter Russin & Meaghan Murphy, *An Unlimited Reach-Back Period when the IRS is the Triggering Creditor?* 36 Am. Bankr. Inst. J. 22 (Jan. 2017).

[43] *Bledsoe v. Flamingo Prop., LLC (In re Musselwhite)*, No. 20-00142-5, Adv. No. 20-00142-5, 2021 WL 4342902, at *11 (Bankr. E.D.N.C. Sept. 23, 2021).

[44] 555 B.R. at 883.

[45] 525 B.R. at 710.

[46] *United States v. Krause (In re Krause)*, No. 05-17429, Adv. No. 05-5775, 2007 Bankr. LEXIS 4068 (Bankr. D. Kan. Nov. 13, 2007).

18

both the IRS, as a creditor of the debtor, and the trustee, stepping into the shoes of the IRS under § 544(b). As to the IRS's claim, the court held that the applicable limitations period was 26 U.S.C. § 6502, under which the trigger date is the date of assessment and the conveyance dates are irrelevant. As to the trustee's claim under § 544(b), the court found that both § 546(a) and 26 U.S.C. § 6502 were applicable. Section 546(a) required the Trustee's avoidance claim to be filed within two years of when the bankruptcy case was filed, and 26 U.S.C. § 6502 determined if the IRS's fraudulent conveyance claims were viable on the date of filing.

*Krause* was decided in 2007, and has not been followed with respect to the look back period. The majority of courts hold that the ten year period of 26 U.S.C. § 6502 applies.[47] In *Kaiser*, the defendants argued that if the state law look back period did not apply, the "IRS's statute of limitations is unlimited."[48] The court, when rejecting this argument, stated, "this is not the case. In general, the IRS is subject to a ten-year state statute of limitations for collection, measured from the date of assessment."[49]

---

[47] 5 *Collier on Bankruptcy* at ¶ 544.06.

[48] *In re Kaiser*, 525 B.R. at 710.

[49] *Id.*

19

Statutes of limitations and look back periods serve similar purposes. Limitation periods are not mere technicalities, but are fundamental to a well-ordered judicial system.[50] They serve the salutary purpose of "promoting justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."[51] If there were no applicable look back period when a trustee steps into the shoes of the IRS under § 544(b), debtors could be unjustly forced to defend long ago, legitimate, good faith transfers. For example, a trustee could challenge a debtor's transfer of farming assets to a debtor's spouse, siblings, or children made thirty years before bankruptcy was filed. This Court finds such a construction of § 544(b) unacceptable.

In conclusion, the Court follows the majority position. If the IRS has a allowable claim against the Debtor, a trustee may step into the shoes of the IRS under § 544(b) and assert the IRS's state law avoidance rights. In doing so, the state law look back period does not limit the transfers which are

---

[50] *Bd. of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 487 (1980).

[51] *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)).

avoidable or extinguish any avoidance claims. Section 6502 of Title 26 limits the look back period to ten years.

**C. When stepping into the shoes of the IRS under § 544(b), the Trustee may pursue avoidance against the Debtor's transferees under the FDCPA.**

In the Amended Complaint, the Trustee alleges that when stepping into the shoes of the IRS, in addition to asserting state law claims, she may assert avoidance claims under the FDCPA, which has a six year look back period. The Defendants submit that this portion of the Amended Complaint does not state a claim for relief because use of the FDCPA is limited to the federal government.

Courts are divided on whether the FDCPA can be utilized as applicable law under § 544(b), and there is no Tenth Circuit precedent on the issue. In support of their position, Defendants cite *MC Asset Recovery*,[52] a Georgia district court opinion, and *Mirant,*[53] a Fifth Circuit Court of Appeals decision. *MC Asset Recovery* held a nongovernmental entity may not use the fraudulent transfer sections of the FDCPA as "applicable law" under 544(b) because the FDCPA "represents the exclusive procedure for the United States, and no

---

[52] *MC Asset Recovery, LLC v. The Southern Co.*, No. 1:06-CV-0417, 2008 WL 8832805 (N.D. Ga. July 7, 2008).

[53] *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530 (5th Cir. 2012).

other entity, to utilize in collecting its debts."[54] This conclusion is based on two sections of the FDCPA, 28 U.S.C. § 3001(a)(1), which states, "the chapter provides the exclusive civil procedure for the United States to recover a judgment on a debt" and 28 U.S.C. § 3003(c)(1),which states, "[t]his chapter shall not be construed to supersede or modify the operation of . . . title 11." Legislative history stating that the FDCPA "would have absolutely no effect on the Bankruptcy Code"[55] was cited as bolstering the holding.

The Fifth Circuit in *Mirant* reached the same conclusion. After quoting 28 U.S.C. § 3003(c)(1) and considering a case addressing the interaction of state and federal exemptions under § 522(b)(2), the circuit court found that "treating the FDCPA as applicable law under 544(b) would impermissibly modify the operation of Title 11."[56] The opinion also found support in the same legislative history relied on in *MC Asset Recovery*.

The majority of bankruptcy courts reject *Mirant* and *MC Asset Recovery* and hold that when the United States is the triggering creditor under §

---

[54] *MC Asset Recovery, LLC*, 2008 WL 8832805, at *4 (relying on 28 U.S.C. § 3001).

[55] *Id*. (quoting statement of Rep. Brooks).

[56] *In re Mirant*, 675 F.3d at 535.

22

544(b), a trustee may utilized the FDCPA as applicable law.[57] One court criticizes *MC Asset Recovery* and *Mirant* for failing to give "sufficient weight to the language and purpose of § 544(b)."[58] It observed that state fraudulent transfer statutes are incorporated into § 544(b) because of the operation of the Code, not because of anything in the state law, and there is no reason to treat the FDCPA differently. Another court noted that § 544(b) refers to "applicable law" and does not limit such law to state law.[59] Section 544(b) has been described as an enabling statute having the "purpose to allow a trustee to generally invoke applicable laws, *i.e.* all statutes that an unsecured creditor with an allowed claim in the case could utilize outside of bankruptcy."[60] These courts also agree that the *MC Asset Recovery* and *Mirant* courts improperly placed too much weight on legislative history.[61]

---

[57] *Gordon v. Webster (In re Webster)*, 629 B.R. 654, 678 (Bankr. N.D. Ga. 2021). *See e.g.*, *Vieira v. Gaither (In re Gaither)*, 595 B.R. 201 (Bankr. D.S.C. 2018); *Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816 (Bankr. D. Idaho 2017); *Gordon v. Harrison (In re Alpha Protective Servs, Inc.)*, 531 B.R. 889 (Bankr. M.D. Ga. 2015); *In re Kaiser*, 525 B.R. at 712-13; *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013).

[58] *In re Tronox Inc.*, 503 B.R. at 274.

[59] *In re Kaiser*, 525 B.R. at 714.

[60] *In re CVAH, Inc.*, 570 B.R. at 829.

[61] *E.g.*, *id.* at 829-30.

23

This Court finds the reasoning of the forgoing cases allowing a trustee to invoke the FDCPA persuasive. Section 544(b) places no limitation on the applicable law relied on by a trustee. Utilization of the fraudulent transfers sections of the FDCPA does not supercede or alter the Bankruptcy Code; it fulfills the plain language of § 544(b) allowing a trustee to avoid transfers avoidable by the triggering creditor under the law applicable to avoidance actions by that creditor.[62]

The Court therefore denies Defendants' motion to dismiss the Trustee's claim under the FDCPA. When the IRS is the triggering creditor under § 544(b), a trustee may seek to avoid transfers under applicable federal as well as state law.

## V. Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss Count VI on statute of limitations grounds. The Court agrees with the Trustee that under § 544(b) when stepping into the shoes of the IRS, a trustee may seek avoidance of fraudulent transfers under the Kansas UFTA, in which case the state law four year look period does not apply and 26 U.S.C.

---

[62] The FDCPA declaration that it not supercede or modify Title 11 is easily understood as establishing that if the United States has a claim in a bankruptcy proceeding, the payment of the claim, like the claims of other creditors, is determined by the Code.

§ 6502 operates as a ten year look back period. The Court also agrees with the Trustee that under § 544(b) when stepping into the shoes of the IRS, she may also proceed under the FDCPA, under which there is a six year look back period.

**It is so ordered.**

###